# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY DORIS FLORES,<br><br>               Plaintiff,<br><br>     v.<br><br>ANDREW SAUL,<br>Commissioner of Social Security,<br><br>               Defendant. | Case No. 1:19-cv-00069-SKO<br><br>ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(Doc. 1) |

_____/

## I. INTRODUCTION

On January 15, 2019, Plaintiff Mary Doris Flores ("Plaintiff") filed a complaint under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II of the Social Security Act (the "Act"). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 8, 17.)

## II.     FACTUAL BACKGROUND

On July 9, 2015, Plaintiff protectively filed an application for DIB payments, and on July 13, 2015, Plaintiff filed an application for SSI payments, alleging she became disabled on August 8, 2014 due to Meniere's disease and vertigo. (Administrative Record ("AR") 63, 176–79.) Plaintiff was born on December 13, 1951 and was 63 years old as of the alleged onset date. (AR 178.) Plaintiff has a college education, past work experience as a customer service clerk and a teacher's aide, and last worked full-time in approximately 2014. (AR 66, 71–72.)

**A.     Relevant Medical Evidence[2]**

**1.     Baz Allergy Asthma & Sinus Center**

Plaintiff established care with Baz Allergy Asthma & Sinus Center ("Baz") in early 2009 for an allergy problem. (*See* AR 308–18.) A Baz allergist[3] saw Plaintiff on August 14, 2009, and noted that Plaintiff had right-sided hearing deficit and dizziness. (AR 325.) An allergist saw Plaintiff on November 13, 2009, and noted that Plaintiff had "decreased hearing" in her left ear but that it had "improved." (AR 323.) On February 11, 2010, the allergist noted that Plaintiff's "left ear [was] much better, still having some buzzing in [right] ear." (AR 327.) The allergist recommended that Plaintiff resume her Claritin prescription, take Nasonex daily, and follow up with her primary care physician. (AR 328.) On May 13, 2010, the allergist refilled Plaintiff's medications and noted that Plaintiff's ear issues were "much better[.]" (AR 329.)

**2.     William Cusick, D.O.**

On April 29, 2015, following an evaluation of Plaintiff, family practice physician William Cusick opined in a letter that Plaintiff "suffers significant disability from hearing loss and vertigo that she should qualify for permanent disability." (AR 333.) Dr. Cusick included other notes from the evaluation, including his diagnosis of Plaintiff with hypertension, insomnia, knee pain, and Meniere's syndrome. (AR 335.) Plaintiff described her symptoms to Dr. Cusick as "air pressure" which "provokes vertigo, nausea and vomiting" and hearing loss. (AR 355.) Dr. Cusick provided

---

[2] As Plaintiff's assignments of error are generally limited to contentions regarding her hearing loss and vertigo, (*see* Doc. 13 at 4–12), the summary of medical evidence is generally limited to evidence relevant to those impairments.
[3] Plaintiff was seen by multiple different allergists during her time at Baz, and this medical evidence summary refers to the allergists collectively as the "Baz allergist" or the "allergist."

Plaintiff with educational materials for lifestyle changes to help with her Meniere's disease and provided referrals to an audiologist and ear, nose, and throat specialist. (AR 356.)

### 3. Community Care Oakhurst

On or about July 18, 2014, Plaintiff saw family nurse practitioner Sandra Peck. (AR 337.) Ms. Peck worked under the supervision of Plaintiff's primary care physician, family practice physician Daniel Schaffner, M.D., at Community Care Oakhurst. (*See* AR 337.) Ms. Peck noted that Plaintiff had hearing loss, vertigo, nausea, and Meriere's disease, and suggested that Plaintiff get Meclizine over the counter for dizziness and try nasal spray for her Meniere's disease. (AR 337–38.) Plaintiff returned to Ms. Peck on August 8, 2014, and Ms. Peck noted that Plaintiff's medicine helped, but Plaintiff still did not "know when these episodes are going to hit her" and the episodes were sometimes "severe." (AR 375.) Ms. Peck noted Plaintiff had hearing loss in her right ear, nausea with dizzy episodes, and dizziness. (AR 375.) Ms. Peck opined that Plaintiff was able to perform work and perform the essential functions of her position. (AR 393.) Ms. Peck also opined that Plaintiff would need to be absent from work six times per year for medical evaluations. (AR 394.)

On August 23, 2015, Dr. Schaffner noted that Plaintiff has "severe hearing problems and wants to get a hearing aid and needs an evalauation [sic]." (AR 470.) Dr. Schaffner noted that Plaintiff "has slowly progressive hearing loss" which can be affected by "the weather." (AR 470.) Dr. Schaffner recommended Plaintiff try a "pocket talker" for the hearing loss and may need to progress to hearing aids. (AR 472.)

### 4. Jagdez Singh, M.D.

On February 2, 2016, otolaryngologist Jagdez Singh evaluated Plaintiff for dizziness, hearing loss, and tinnitus. (AR 495–98.) Dr. Singh noted that Plaintiff had been experiencing dizziness for approximately twenty years, which had slowly progressed, and that her prescriptions do not help with the dizziness. (AR 495.) Dr. Singh noted that Plaintiff had "bilateral ringing in the ears" and has had progressive hearing loss for about five years. (AR 495.) Dr. Singh stated that even with Plaintiff's hearing aids, which she "acquired around September 2015," Dr. Singh had to speak loudly for Plaintiff to hear him. (AR 496.) Dr. Singh noted that Plaintiff's ear canals

were normal, and an audiogram revealed "a bilateral severe sensorineural hearing loss." (AR 496.) Dr. Singh concluded that Plaintiff required hearing aids. (AR 496.)

### 5. Raju Lakshmanaraju, M.D.

On September 17, 2015, internist Raju Lakshmanaraju evaluated Plaintiff and submitted an internal medicine evaluation on her behalf. (AR 484–89.) Dr. Lakshamanaraju noted that Plaintiff had bilateral hearing aids, but her "canals and tympanic membranes" were normal. (AR 486.) Dr. Lakshmanaraju also noted that Plaintiff's cranial nerves were "[g]rossly intact except for bilateral sensorineural hearing loss." (AR 488.) Dr. Lakshmanaraju diagnosed Plaintiff with chronic objective vertigo, secondary to Meniere's disease, which Plaintiff "manages with symptomatic treatment"; and chronic, progressive bilateral sensorineural hearing loss, worse in the right ear, which Plaintiff "manages with hearing aids." (AR 488.) Dr. Lakshmanaraju opined that Plaintiff could stand/walk and sit six hours in an eight-hour work day, did not need any assistive devices, could lift ten pounds occasionally and frequently, was incapable of performing postural activities, had no manipulative limitations, and was incapable of performing environmental activities due to her vertigo. (AR 489.)

### 6. Willis Callins, M.D.

On March 9, 2016, otolaryngologist Willis Callins performed a consultative evaluation without examining Plaintiff and only reviewing the medical evidence. (*See* AR 504–509.) Dr. Callins opined that the medical evidence did not support diagnoses of Meniere's disease, dizziness, hearing loss, or tinnitus. (AR 506.) Dr. Callins further opined that the medical evidence did not support any significant impairment, that the alleged impairments had no more than a minimal impact on Plaintiff's functioning, and that "[n]o RFC communicative or noise related limitation is warranted." (AR 506.) Dr. Callins found that all of Plaintiff's allege impairments were non severe. (AR 507.)

### 7. State Agency Physicians

On September 3, 2015, F. Greene, M.D., a Disability Determinations Service medical consultant, assessed the severity of Plaintiff's impairments and Plaintiff's physical RFC. (AR 58–60.) Dr. Greene opined that Plaintiff could lift/carry 20 pounds occasionally and 10 pounds

frequently; sit, stand and walk six hours in an eight-hour workday; push/pull unlimited amounts; climb ramps/stairs frequently and ladders/ropes/scaffolds never; balance frequently; stoop, kneel, crouch, and crawl occasionally; had limited hearing in both ears, unlimited speaking, should be limited to occasional exposure to loud ambient noise; should avoid concentrated exposure to vibration, and avoid hazardous machinery. (AR 58–60.)

Upon reconsideration, on February 17, 2016, another Disability Determinations Service medical consultant, D. Tayloe, M.D., affirmed Dr. Greene's findings. (AR 83–85.)

**B.   Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on September 3, 2015, and again on reconsideration on February 17, 2016. (AR 52–73, 76–101.) On April 5, 2016, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 119.)

On January 3, 2018, Plaintiff appeared with counsel and testified before an ALJ as to her alleged disabling conditions. (AR 27–51.) Plaintiff, who was not wearing her hearing aids, testified she has trouble hearing and asked the ALJ and her attorney to repeat their questions multiple times throughout the hearing. (*See* AR 31–45.) When the ALJ asked Plaintiff why she was not wearing her hearing aids that day, Plaintiff responded that the hearing aids do not help her understand somebody speaking and she "just hear[s] noise." (AR 31–32.) Plaintiff testified she had problems with vertigo, headaches and nausea caused by her Meniere's disease. (AR 35.) Plaintiff testified that she would get vertigo approximately four or five times a week lasting for up to twelve hours. (AR 35.) Plaintiff stated she takes meclizine for her nausea. (AR 36.) Plaintiff stated that her hearing has gotten progressively worse beginning in 2007, and she can only hear slightly out of her left ear now. (AR 37.) Plaintiff's doctors believe her hearing loss was caused by the Meniere's disease. (AR 38.) Plaintiff cannot make meals or do other household chores that involve bending down or any kind of movement that might cause dizziness. (AR 39.) Plaintiff testified she very seldom leaves the house and she is prescribed hearing aids. (AR 42.)

A Vocational Expert ("VE") testified at the hearing that Plaintiff had past work as a teacher aide II, Dictionary of Occupational Titles (DOT) code 249.227-074, which was light work with a

specific vocational preparation (SVP)[4] of 3; and a customer service clerk, DOT code 299.367-010, which was light work with a SVP of 4. (AR 43.) The ALJ asked the VE to consider a person of Plaintiff's age, education, and with her work background. (AR 43.) The VE was also to assume this person was able to lift and carry twenty pounds occasionally and ten pounds frequently, sit for six hours of an eight-hour workday, stand and/or walk for six hours of an eight-hour workday, perform frequent climbing of ramps and stairs and balancing, perform occasional stooping, kneeling, crouching, or crawling, is precluded from climbing ladders, ropes, or scaffolds, should avoid more than occasional exposure to loud ambient noises, avoid concentrated exposure to vibration, fumes, hazards, and uneven terrain, avoid unprotected heights, can perform work tasks that do not require fine hearing discrimination and which allow for face-to-face communication of directions, and can perform work tasks that allow for the wearing of hearing aids in the workplace. (AR 44.) The VE testified that such a person could not perform Plaintiff's past relevant work. (AR 44.)

In a second hypothetical, the ALJ asked the VE to consider an individual with the limitations described in the first hypothetical except that the person does not have the face-to-face communication limitation. (AR 45.) The VE testified that such a person could perform Plaintiff's past relevant work. (AR 46.) Plaintiff's attorney posed a third hypothetical, which involved an individual with the limitations in the first two hypotheticals except that the person is incapable of performing postural activities and environmental activities. (AR 49.) The VE testified that such a person could not perform Plaintiff's past relevant work or any other work. (AR 49.)

**C.     The ALJ's Decision**

In a decision dated April 17, 2018, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 15–22.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 17–22.) The ALJ decided that Plaintiff had not engaged in substantial gainful activity since August 8, 2014, the alleged onset date (step one). (AR 17.) At step two, the ALJ

---

[4] Specific vocational preparation (SVP), as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id.*

found Plaintiff had severe impairments of bilateral sensorineural hearing loss and vertigo. (AR 17.) The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the Listings (step three). (AR 18.)

The ALJ assessed Plaintiff's RFC and applied the RFC assessment at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity … We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff retained the RFC:

> to perform work as follows[:] [Plaintiff] can lift 20 pounds occasionally, lift or carry 10 pounds frequently; stand and walk 6 out of 8 hours a day; sit 6 out of 8 hours a day; frequently climb ramps, stairs and balance. [Plaintiff] can occasionally stoop, kneel, crouch and crawl. [Plaintiff] can do work that does not involve: climbing ladders, ropes and scaffolds; concentrated exposure to vibrations, fumes, hazards, uneven terrain; or unprotected heights. [Plaintiff] can occasionally be exposed to loud ambient noise, and is able to perform work tasks that do not require fine hearing discrimination, and which allow use of hearing aids in the workplace.

(AR 18.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" she rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record[.]" (AR 19.) At step five, the ALJ found that Plaintiff could perform her past relevant work. (AR 21–22.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on May 25, 2018. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

### III.     LEGAL STANDARD

**A.     Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her]

previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.    Scope of Review**

"This court may set aside the Commissioner's denial of disability insurance benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence is

defined as being more than a mere scintilla, but less than a preponderance." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citing *Tackett*, 180 F.3d at 1098). "Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"This is a highly deferential standard of review …" *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund*, 253 F.3d at 1156 (citations omitted) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.   DISCUSSION

Plaintiff contends that the ALJ (1) erred in formulating Plaintiff's RFC by failing to properly account for Plaintiff's hearing limitations and (2) erred in discounting Plaintiff's credibility. (*See* Doc. 13 at 4, 7.) The Commissioner responds that the ALJ properly accounted for Plaintiff's hearing limitations in the RFC formulation and properly evaluated Plaintiff's

credibility. (Doc. 14 at 3–9.) For the reasons stated below, the Court agrees with the Commissioner's position.

### A. The ALJ Properly Accounted for Plaintiff's Hearing Limitations in the RFC.

#### 1. Legal Standard

An RFC assessment is an "administrative finding" that is reserved to the Commissioner. *See* 20 C.F.R. § 416.927(d)(2). The RFC is "the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). In formulating an RFC, the ALJ weighs medical and other source opinions, including lay opinions, as well as the claimant's credibility. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009). The RFC assessment must be supported by substantial evidence, and "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (quoting SSR 96-8p).

#### 2. Analysis

Dr. Singh opined that Plaintiff required hearing aids, and noted that during his evaluation he had to speak loudly for Plaintiff to understand him even though she was wearing her hearing aids. (AR 496.) The state agency physicians, Dr. Greene and Dr. Tayloe, opined that Plaintiff can have occasional exposure to loud ambient noise and limited Plaintiff to light work. (AR 58–60, 83–85.) The ALJ gave "great weight" to the opinions of Dr. Singh, Dr. Greene, and Dr. Tayloe. (AR 20.) In her RFC assessment, the ALJ determined that Plaintiff could "occasionally be exposed to loud ambient noise, and is able to perform work tasks that do not require fine hearing discrimination, and which allow use of hearing aids in the workplace." (AR 18.) While Plaintiff contends that the ALJ erred by not "accurately describ[ing]" Plaintiff's hearing limitations in the

RFC, the Court disagrees and finds that the ALJ properly incorporated Plaintiff's hearing limitations in the RFC. (*See* Doc. 13 at 4.)

"[A]n RFC that fails to take into account a claimant's limitations is defective." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). However, "[t]here is no requirement that the RFC recite medical opinions verbatim, rather the ALJ is responsible for translating and incorporating medical findings into a succinct RFC." *McIntosh v. Colvin*, No. 16–cv–0963–JAH–BGS, 2018 WL 1101102, at *5 (S.D. Cal. Feb. 26, 2018) (citing *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015)). In other words, the ALJ "may incorporate the opinions of a physician by assessing RFC limitations entirely consistent with, but not identical to limitations assessed by the physician." *Ruiz v. Berryhill*, No. 1:17–CV–00180–BAM, 2018 WL 4204257, at *5 (E.D. Cal. Sept. 4, 2018) (citing *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222–23 (9th Cir. 2010)); *see also Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question.").

Here, Plaintiff's contention is unpersuasive for two reasons. First, Plaintiff does not clearly and sufficiently state how she believes the ALJ's RFC inaccurately describes her hearing limitations and does not cite any case that supports her position in her opening brief.[5] (*See* Doc. 13 at 4–7.) Second, and more importantly, the ALJ's RFC assessment, including the incorporated hearing limitations, is supported by substantial evidence, and the Court may not reweigh the evidence. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) ("The ALJ is responsible

---

[5] Plaintiff also makes statements in passing regarding the ALJ's finding that Plaintiff could perform past relevant work, (Doc. 13 at 6–7), which are not clearly connected to her challenged issue of whether the ALJ's RFC assessment accurately described Plaintiff's hearing limitations. If a plaintiff does not clearly raise an assertion of error in her opening brief, it is waived. *Farley v. Colvin*, 231 F. Supp. 3d 335, 341 (N.D. Cal. 2017). In any event, the Court finds that the ALJ did not err in finding that Plaintiff could perform her past relevant work as a customer service clerk and teacher's aide. Contrary to Plaintiff's contention, both the teacher's aide and customer service clerk jobs are classified under the DOT as level 3, or moderate, noise level, with which Plaintiff's RFC limitations are consistent. *See* DOT 299.367-010, 249.367-074.

for . . . resolving conflicts in medical testimony, and for resolving ambiguities . . . We must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"); *Magallanes v. Bowen*, 881 F.3d 747, 750 (9th Cir. 1989).

Specifically, the ALJ's RFC assessment included hearing limitations that Plaintiff could "occasionally be exposed to loud ambient noise, and is able to perform work tasks that do not require fine hearing discrimination, and which allow use of hearing aids in the workplace." (AR 18.) These limitations are consistent with the limitations prescribed by the state agency physicians. (*See* AR 58–60, 83–85.) Opinions of non-examining physicians "may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." *Andrews*, 53 F.3d at 1041; *Tonapetyan*, 242 F.3d at 1149. The opinions the state agency physicians are consistent with and supported by the medical evidence in the record—for example, Dr. Lakshmanaraju's assessment that Plaintiff's bilateral hearing loss was managed with hearing aids and Dr. Cusick's assessment that Plaintiff's hearing aids helped her hear her granddaughter speak. (*See, e.g.,* AR 488, 514.)

Further, contrary to Plaintiff's contention, the Court does not find the ALJ's RFC assessment to be inconsistent with Dr. Singh's findings. Dr. Singh found that Plaintiff required hearing aids, and the ALJ accommodated that finding by stating that Plaintiff could not perform tasks that required fine hearing discrimination and must be allowed to use hearing aids on the job. (*See* AR 18.) Although Dr. Singh observed that he had to speak loudly for Plaintiff to hear him despite her hearing aids, Plaintiff has not shown that this necessitates any additional limitation beyond the ample hearing limitations included in the RFC, and "there is no requirement that the RFC recite medical opinions verbatim." *McIntosh*, 2018 WL 1101102, at *5. Also, Dr. Singh did not opine that Plaintiff required any additional hearing accommodations beyond hearing aids, despite his observation regarding his speech volume. (*See* AR 495–98.)

Finally, the Court does not assign much weight to Plaintiff's recitation of the hearing transcript highlighting that Plaintiff had to ask ALJ and her attorney to repeat their questions a few times, (*see* Doc. 13 at 5), because Plaintiff was *not* wearing her hearing aids during the hearing. (*See* AR 31.)  If anything, this illustrates that although Plaintiff was not wearing her required hearing aids during the hearing, she was able to hear and understand the majority of the questions from the ALJ and her attorney. (*See* AR 31–46.)  Accordingly, the Court finds that the ALJ's RFC assessment is supported by substantial evidence and she incorporated proper hearing limitations in the RFC.

**B.    The ALJ Properly Discounted Plaintiff's Subjective Symptom Statements.**

**1.    Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged.  *Id.*  The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom."  *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).  If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if he gives "specific, clear and convincing reasons" for the rejection.  *Id.*  As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.  If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009); 20 C.F.R. § 404.1529. Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet" and it "is the most demanding [standard] required in Social Security cases." *Garrison*, 759 F.3d at 1015 (citation omitted). "General findings are insufficient" to satisfy this standard. *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). "[R]ather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834); *see, e.g., Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2008) ("To support a lack of credibility finding, the ALJ [is] required to 'point to specific facts in the record which demonstrate that [the claimant] is in less pain than she claims.'" (quoting *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)); *cf. Burrell*, 775 F.3d at 1138 (stating that the Ninth Circuit's "decisions make clear that [courts] may not take a general finding . . . and comb the administrative record to find specific" support for the finding).

**2.    Analysis**

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 19.) The ALJ also found that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (AR 19.) Since the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for her adverse credibility finding. *See Vasquez*, 572 F.3d at 591.

The ALJ found that Plaintiff's testimony was less than credible because it was inconsistent with the objective medical evidence, including significant evidence of successful treatment and

because there was an unexplained treatment gap in the medical records. (AR 19–21.) Plaintiff contends that the ALJ failed to properly evaluate her testimony. (Doc. 13 at 7.) The Court disagrees and finds that the ALJ's reasons for discounting Plaintiff's credibility were specific, clear and convincing.

First, the ALJ noted that Plaintiff's testimony, including her testimony that her hearing aids did not help her understand people speaking, (AR 31), was inconsistent with the medical evidence. The ALJ referenced multiple specific treatment notes that contradicted Plaintiff's claim that her hearing aids did not help, including Dr. Lakshmanaraju's opinion that Plaintiff's hearing aids "help[] her quite a bit." (AR 19) (citing AR 484). The record also contains multiple statements from physicians that Plaintiff's hearing aids have been a successful treatment.[6] (*See, e.g.,* AR 488, 506, 514.) "Impairments that can be controlled effectively with medication are not disabling." *Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Thus, the Court finds that this is a specific clear and convincing reason to discount Plaintiff's credibility.

Second, the ALJ noted that as to Plaintiff's complaints of vertigo symptoms and hearing loss, Plaintiff had not been treated for either condition since May 2017, "which shows that [Plaintiff's] condition is not as limiting as alleged and treatment has been beneficial." (AR 20.) Unexplained gaps in treatment or insufficiently explained basis for a lack of treatment may be legitimately considered in making an adverse credibility determination. *Fair v. Bowen*, 885 F.2d 597, 603-04 (1989). Here, the ALJ correctly noted a lack of treatment starting in May 2017 that was not adequately explained by Plaintiff, and the Court finds that this is a specific clear and

---

[6] The Court notes that one treatment record from Dr. Cusick states both that Plaintiff's hearing aids have helped her hear her granddaughter speak and that they have only worked about half the time. (*See* AR 514.) While this appears to be a contradiction, the ALJ's interpretation of the medical evidence as a whole was certainly rational at the very least, and it is the ALJ's role to resolve ambiguities and contradictions in the medical evidence, *Andrews*, 53 F.3d at 1041. Thus, the Court will not disturb the ALJ's interpretation of the objective medical evidence as it relates to the ALJ's RFC determination and the ALJ's assessment of Plaintiff's credibility.

convincing reason to discount Plaintiff's credibility. *See Molina*, 674 F.3d at 1112; *Burch*, 400 F.3d at 681. Thus, the Court finds that the ALJ properly evaluated Plaintiff's credibility.[7]

## V.     CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Andrew Saul, Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated:  **July 9, 2020**                              /s/ *Sheila K. Oberto*
                                                              UNITED STATES MAGISTRATE JUDGE

---

[7] The Court notes that even though there was significant medical evidence to contradict Plaintiff's claim that her hearing aids did not help her, and that her vertigo was significantly debilitating, the ALJ included appropriate limitations related to the hearing and vertigo conditions in the RFC nonetheless. (*See* AR 18.) Thus, any error in the ALJ's evaluation of Plaintiff's testimony would be harmless. *See Molina*, 674 F.3d at 1115.